## HOPKINS v. CONNECTICUT GENERAL LIFE INS. CO.

(Supreme Court, Trial Term, New York County.    March, 1916.)

1. INSURANCE ⬙133(3)—CONTRACT—RIDER—SIGNATURE BY INSURER.

A rider attached to an accident policy, providing that the policy does not cover loss or disability caused directly or indirectly by any act of any of the belligerent nations engaged in the European war, need not be signed by the insurer, since it contains no promise or undertaking on its part, and does not waive any of its rights or impose any obligation upon it.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 212, 213; Dec. Dig. ⬙133(3).]

2. INSURANCE ⬙376(1)—CONSTRUCTION OF CONTRACT—CHANGE OF POLICY.

A clause in an accident policy providing that no agent has authority to change the policy or waive any of its provisions, and no change shall be valid unless approved by an executive officer of the insurer and such approval be indorsed on the policy, is solely for the benefit of the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 952–954; Dec. Dig. ⬙376(1).]

3. INSURANCE ⬙376(1)—CONTRACT—AUTHORITY OF AGENT.

Restrictions in an accident policy on an agent's power to modify it do not apply to a rider attached to the policy at the time of its execution, but only to a change after the contract has been made.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 952–954; Dec. Dig. ⬙376(1).]

4. INSURANCE ⬙138(1)—CONTRACT—AUTHORITY OF AGENT—ESTOPPEL OF BENEFICIARY.

Where insurance agents were authorized to sign a rider, to be attached to an accident policy, providing that the policy should not cover loss caused directly or indirectly by any act of any of the belligerent nations engaged in the European war, and to deliver the policy to insured only "if and when he signed the rider," the beneficiary of the policy cannot recover on the ground of invalidity of the rider, since, if that falls for want of authority of the agents, the contract as a whole is void.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 246–249; Dec. Dig. ⬙138(1).]

5. INSURANCE ⬙10—COMPANIES—REGULATION—FILING FORMS.

Insurance Law (Consol. Laws, c. 28) § 107, as added by Laws 1913, c. 155, requiring the forms of policies to be filed with the superintendent of insurance, requires the general form of each class of riders to be attached to policies to be filed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 10; Dec. Dig. ⬙10.]

6. INSURANCE ⬙138(1)—LIABILITY OF INSURANCE—VALIDITY OF CONDITIONS.

Under Insurance Law, § 107, as added by Laws 1913, c. 155, requiring insurers to file with the superintendent of insurance the forms of policies issued, and providing, in subdivision "i," that a policy issued in violation of this section shall be held to be valid, but shall be construed as provided in the section, and when any provision in the policy is in conflict with any provision of the section, the rights, duties, and obligations of the insurer, the policy holder, and the beneficiary shall be governed by the section, the fact that a war rider attached to an accident policy has not been filed with the superintendent of insurance does not render it invalid, and authorize a recovery on the policy without reference to its pro-

visions, but merely subjects the insurer to the penalties provided by the law.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 246–249; Dec. Dig. ☞138(1).]

**7. INSURANCE ☞133(2)—CONTRACT—FORM AND REQUISITES.**

Insurance Law, § 107, subd. "b," cl. 6, as added by Laws 1913, c. 155, requiring any portion of a policy which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, to be printed in bold-faced type and with greater prominence than any other portion of the text, applies only to an exception in the main part of the policy, and not to exceptions consisting of riders or attached papers.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞133(2).]

Action by the widow of Albert L. Hopkins against the Connecticut General Life Insurance Company. Complaint dismissed on the merits.

Thayer & Van Slyke, of New York City, for plaintiff.
George Coggill, of New York City, for defendant.

SHEARN, J. On April 29, 1915, defendant's agents in New York delivered to Albert L. Hopkins a policy of accident insurance issued by defendant. The application was signed by Hopkins and in the event of his death, resulting from the injuries insured against, the policy provided for the payment of $40,000 to his wife, the plaintiff herein. Hopkins stated to defendant's agent at the time of making the application that he intended to travel abroad. The policy was delivered to him after he had signed a rider attached to the policy, reading:

"Rider to be attached to and form part of policy No. C. F. 6674, issued by the Connecticut General Life Insurance Company to Albert Lloyd Hopkins.

"In consideration of the issuance of the policy, I hereby agree for myself, my beneficiary, our respective executors, administrators or assigns, that this policy does not cover any loss or disability resulting from bodily injuries caused directly or indirectly by any act of any of the belligerent nations engaged in the present European war.

"Dated this 29th day of April, A. D. 1915.
                    "Connecticut Gen. Life Ins. Co.
              "Wells, Potter, Fish & Ustick, Inc.,
                         "By Frank H. Wells, Treasurer.
              "A. L. Hopkins, Insured."

Wells, Potter, Fish & Ustick, Incorporated, is a domestic corporation, of which Frank H. Wells is treasurer and managing director. At and prior to the time of the issuance of the policy Wells, Potter, Fish & Ustick, Incorporated, had been authorized to act as agent for the defendant under section 91a of the Insurance Law and had been authorized by defendant to issue the policy involved in this action to Hopkins "if and when he signed the rider" above referred to. Wells, Potter, Fish & Ustick, Incorporated, had, with the knowledge and consent of defendant, made a practice of signing similar riders attached to similar policies. This rider was copied from a form prepared by an executive officer of defendant. Wells, Potter, Fish & Ustick, Incorporated, had no authority to issue a policy such as the one in suit

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to any person intending to travel abroad unless such person signed a rider similar to the one in question. After the policy was issued Hopkins sailed on the Lusitania and was drowned while a passenger on that vessel when she was sunk by a submarine belonging to the German navy on May 7, 1915.

The learned counsel for the plaintiff contend that the rider, signed by the insured, excluding injuries caused by the acts of a belligerent from the risks insured against by the contract of insurance must be wholly disregarded as invalid: First, because it was not signed by an executive officer of defendant; second, because the form of the rider had not been filed with and approved by the superintendent of insurance of the state of New York before it was signed and attached to the policy; and, third, because the typewritten rider was not "printed in bold-faced type and with greater prominence than any other portion of the text of the policy." These three technical claims are wholly unrelated. Each must stand on its own merits.

[1-3] 1. The lack of the signature of an executive officer to the rider. In the first place there is no reason why the defendant should have signed the rider at all. It contains no promise or undertaking on the part of defendant, and does not purport to waive any of its rights or impose any obligation upon it. Plaintiff's counsel contend, however, that clause 2 of the standard provisions of the policy requires that the rider be signed by an executive officer. Clause 2 provides:

"No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceedings hereunder.

"No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be indorsed hereon."

Such provisions as to waiver and change in the policy are solely for the benefit of the insurance company. Belt v. American Central Ins. Co., 29 App. Div. 546, 552, 53 N. Y. Supp. 316. Restrictions inserted in a policy upon an agent's power to modify the contract do not apply to the inception of the contract of insurance, but only to a change after the contract has been made. Wood v. American Fire Ins. Co., 149 N. Y. 382, 386, 44 N. E. 80, 52 Am. St. Rep. 733. The rider effected no *change* in the policy. Its provisions are just as much a part of the policy as though written or printed upon the main part thereof. The standard provisions of the policy distinctly provide:

"This policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance."

In the case at bar the war rider was attached and had been signed by plaintiff's husband and defendant's agents, so that it is impossible to hold that the contract of insurance was changed, as it never had any existence apart from the rider.

[4] But even if, contrary to the settled law, it could be held that the limitation upon the agent's authority applied to changes from the printed form of the policy in the inception of the contract of insurance, this would avail the plaintiff nothing, since, although not executive officers of defendant, Wells, Potter, Fish & Ustick, Incorpo-

rated, were authorized by defendant to sign the rider and make the contract of insurance in exactly the form in which it was made, if any signature by or on behalf of the defendant should be regarded as necessary. This clearly appears from the facts that they were defendant's agents, they countersigned the policy as such, they were authorized to deliver the policy to Hopkins "if and when he signed the rider," they had with the knowledge and consent of defendant been in the habit of signing similar riders for defendant, and they had no authority to deliver any such policy to any one intending to travel abroad unless such a rider was signed and attached to the policy. In cases where the authority of an agent to bind his principal is in question, the issue is whether he actually had authority, not whether some other agent or executive officer might not have bound the principal also, and, if he actually had authority, it makes no difference that he was not an executive officer of the principal. As forcibly queried by defendant's learned counsel:

"If, as plaintiff contends, Wells, Potter, Fish & Ustick, Incorporated, could not bind defendant by signing its name to the war rider, how can it be contended that they could bind defendant by issuing and delivering a policy without the war rider, when it is also distinctly stipulated that they could not deliver the policy to Hopkins without that rider being attached and signed by him?"

The plaintiff's challenge of the agent's authority to make the contract upon the terms as expressed in the instrument as delivered, is equivalent to an assertion that no contract was made, and this would leave plaintiff without a cause of action. One party to a contract, made through an agent of the other, cannot, by proving that the agent exceeded his authority, claim that the parties actually made a different contract because the making of such different contract would have been within the agent's power. It is evident from the fact that Hopkins signed the rider that it expressed his intention as to the contract he was making. It is equally evident from the fact that the defendant limited its agents only to this rider that it did not intend to make any contract of insurance without the rider. In substance, the court is being asked to substitute for the contract which has been made, or intended to be made, one which Hopkins did not intend to make and which defendant's agents did not intend to make and were not authorized to make.

[5] 2. The failure to file the rider with the superintendent of insurance. I do not agree with the defendant's contention that section 107 of the Insurance Law, properly construed, does not require the form of riders or other attached provisions of an accident policy to be filed. It does require the "form of policy" to be filed. The rider is just as important a part of the policy as any other. It affects the risk, and very naturally affects the premium rates. The claim that the necessity of filing the form of proposed riders would cripple the accident insurance business and amount to a practical impossibility does not appeal to me as sound. The very policy in question contains a hernia rider, the form of which was filed by the defendant and approved by the superintendent of insurance before the policy was ex-

ecuted. The law does not require that each individual rider should be filed. It is sufficient to file the general form of each class of riders. In the case of a substantial departure from any approved form of rider it is no hardship to require the insurance company to file same and secure approval before issuing the policy.

[6] But the plaintiff claims that the mere failure to file the rider renders it invalid, and that it can be wholly disregarded, and the contract read as though executed without any rider. Where the court is asked by force of a legislative enactment to substitute for the written contract entered into by the parties a contract clearly different from that which both of them intended, the language of the statute relied upon to accomplish this result must be clear and explicit. No such intent or language can be found in section 107 of the Insurance Law. The section, subdivision "i," provides:

"A policy issued in violation of this section, shall be held to be valid, but shall be construed as provided in this section, and when any provision in such a policy is in conflict with any provision of this section, the rights, duties and obligations of the insurer, the policy holder and the beneficiary shall be governed by the provisions of this section."

This language is plain and the meaning clear. A policy issued in violation of the section is nevertheless valid, and shall be construed as provided in the section. These provisions examined show that no provision in the policy or attached papers which purports to contradict or vary any of the standard provisions of the policy is of any avail to accomplish that purpose. Any provision of the policy which conflicts with any provision of the section is equally to be disregarded. But the rider in the case at bar does not purport to vary, alter, or extend any standard provision of the policy or of the statute. The standard provisions do not deal with the nature of the risk insured against, nor do the provisions of this section. The long line of cases cited in support of the plaintiff's contention have to do with the invalidity of provisions in insurance contracts that conflict with the statute or with public policy. It is, of course, well settled that insurance companies may not declare a forfeiture of policies without complying with certain notice conditions. But such cases are not at all in point. Such provisions are void, because repugnant to statute or to sound public policy. But there is nothing in this statute declaring or indicating that a rider not filed shall be invalid. Nor does any consideration of public policy require or justify any such result. Such a holding would lead to the most unjust consequences. Suppose a policy was issued, no part of which had been filed; would it be wholly invalid? The statute says it would not. Section 107, subd. "i."

Again, as illustrated by defendant's counsel, assume that the defendant had filed and the superintendent of insurance had approved a form of accident policy insuring against injuries received while traveling on a railroad on land, and that the insured had applied to defendant for a similar policy insuring him against injuries received while traveling on a vessel on the ocean, and that without waiting to file this form of policy the defendant had issued it to him, and he had been injured while on the vessel. Under these circumstances it could not be

contended with any plausibility or reason that the filed and approved form of policy should be substituted for the actual policy issued. Yet the plaintiff's argument, carried to its logical conclusion, leads to just such an inequitable result.

Plaintiff's counsel contend that to hold the rider valid where defendant has failed to file it nullifies the statute, and in effect permits the insurance company to incorporate in a policy with entire immunity clauses which would never receive the sanction of the superintendent of insurance. This is not correct, however, for the statute provides penalties for failure to obey the statute, and even subjects the offending company to expulsion from the state. That is much more sensible and just than to invalidate the contract, or any essential part of it, merely because it was not filed and approved before it was issued. If such were the law, no one would know whether he had a valid and enforceable contract of insurance until he had made a search at Albany for the form and approval of his policy.

[7] 3. The failure to print the rider in bold-faced type. This ground is not very seriously urged and requires little consideration. Subdivision "b" (6) of section 107 provides:

"No such policy shall be so issued or delivered * * * (6) unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply, provided, however, that any portion of such policy which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold-faced type and with greater prominence than any other portion of the text of the policy."

This paragraph applies only to an exception in the main part of the policy and not to exceptions consisting of riders or attached papers. The purpose of this was to give prominence to an exception, so that it would not escape the attention of the insured by being tucked away somewhere in his policy. There is no danger of overlooking a limitation of the risk contained in an attached paper signed by the applicant for the policy and referring only to the limitation. This war rider was given great prominence. It was separately signed by the insured, a business man and president of a great shipbuilding company, and it is unreasonable to presume that he did not read the rider that he signed. From its prominent position, and the fact that his signature was attached to it, it seems evident that it was in a position to be, and was, brought particularly to his attention. The plaintiff's counsel have been commendably ingenious, industrious, and earnest in their effort to maintain a recovery upon this policy; but the equities are all against the plaintiff, and the technical grounds advanced, when examined, are found to be unconvincing and unsound.

The complaint must be dismissed upon the merits, with costs.